**James E. MORGAN, Appellee,**

v.

**SMITH BARNEY, HARRIS UPHAM & CO., Appellants.**

**No. 82–2475.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1983.

Decided March 14, 1984.

Rehearing en banc Denied April 24, 1984.

Daniel M. Dibble, Kathryn H. Vratil, Kansas City, Mo., for Smith Barney, Harris Upham & Co.

Charles C. Shafer III, Charles C. Shafer, Jr., P.C., Kansas City, Mo., for James E. Morgan.

Before HEANEY, JOHN R. GIBSON, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

James Morgan, a former account executive for Smith Barney, Harris Upham & Company, sued the brokerage firm for slander and prima facie tort. The district court[1] granted Smith Barney's motion to stay the proceedings pending arbitration.

The court reasoned that Morgan's claims were covered by a clause in his employment contract which required him to arbitrate "any controversy ... arising out of employment or termination of employment." Morgan appeals from that ruling. We affirm as to three of the counts in Morgan's complaint and reverse as to the fourth.

In 1978, Morgan accepted a position as account executive for Smith Barney, a Delaware corporation engaged in the buying, selling and trading of securities. Pursuant to his position, Morgan sought membership in the New York Stock Exchange (NYSE) and other organizations by executing Form U-4, the "Uniform Application For Securities and Commodities Industry Representative And/Or Agent." In so doing, Morgan consented to the following provision:

> I agree to abide by the Statute[s], Constitution[s], Rules, and By-Laws as any of the foregoing are amended from time to time of the agency, jurisdiction or organization with or to which I am filing or submitting this application.

This clause thereby incorporated by reference the following two NYSE arbitration provisions. The first, Rule 347, provides that

> [a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration....

The second is Article VIII, section one of the NYSE Constitution:

> [a]ny controversy between parties who are members, ... member firms ... and any controversy between a non-member and a member ... arising out of the business of such member, ... shall at the instance of any such party, be submitted for arbitration, in accordance with

---

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

the provisions of the Constitution and the Rules of the Board of Directors.

In late 1980, Morgan voluntarily resigned from his position at Smith Barney. Almost two years after his departure, he filed this action against Smith Barney for prima facie tort and slander. In counts one and two of his complaint, Morgan alleged that one of his superiors, Mr. Brewster Ellis, had boasted to Morgan's former customers that he had "caused Jim Morgan's demise" and was "investigating his books." Morgan also alleged that Ellis attempted to "scrounge up" complaints from his former customers concerning his handling of their investments. He stated that these false complaints prompted investigations of him by the NYSE Division of Enforcement and the Missouri Securities Commission, resulting in the loss of professional opportunity. In count three, Morgan claimed that his superiors falsely informed persons that his Missouri broker's license was suspended. In count four, Morgan asserted that his supervisors told fellow office workers that he stole things from their desks at night.

Following removal to federal court, the district court granted Smith Barney's motion under section three of the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1976), for a stay pending arbitration under Rule 347 and the NYSE constitution. This appeal followed.

■ The Federal Arbitration Act establishes a statutory scheme for effectuating the federal policy of encouraging arbitration as a less costly and less complicated alternative to litigation. Section two of the Act provides that arbitration agreements contained in contracts involving commerce or a maritime transaction are "valid, irrevocable, and enforceable." [2] Section three grants federal courts the power to stay trial proceedings of issues referable to arbitration under such contracts. In determining the propriety of a section three stay, a federal court "may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). Consequently, the only issue before this court is whether the scope of arbitrable disputes under Rule 347 includes Morgan's slander and prima facie tort claims.[3]

■ Two principles guide our determination. First, the duty to arbitrate is a contractual obligation: only those disputes which a party has agreed to submit to arbitration may be so resolved. *Merrill Lynch, Pierce, Fenner & Smith v. Hovey*, 726 F.2d 1286, 1289 (8th Cir. 1984) (citing *United Steelworkers of America v. Warrior & Gulf Navigation*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)). Arbitrability is thus a matter of contract interpretation. We must ascertain whether the parties intended the particular dispute to be arbitrated as evidenced by the language contained in the agreement. The second principle commands that when contract language is ambiguous or unclear, a "healthy regard" for the federal policy favoring arbitration requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Johnson Controls, Inc. v. City of Cedar Rapids*, 713 F.2d 370, 373 (8th Cir. 1983).

Earlier decisions construing the language of Rule 347 have almost exclusively

---

**2.** The parties do not dispute that the Uniform Application is a contract involving commerce, nor do they contend that NYSE Rule 347 and Article VIII, section one of the NYSE Constitution are not validly incorporated therein and binding on the parties. *See Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972).

**3.** For the purposes of this decision, we find no significant difference in scope between Rule 347 and Article VIII, section one of the NYSE Constitution. Consequently, we will concentrate our analysis on the language of Rule 347.

involved disputes concerning the rights and obligations of the parties under the employment contract—breach of contract and commercial tort claims.[4] One recent decision, however, has considered the applicability of Rule 347 to non-commercial torts.[5] In *Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78 (2d Cir.1983), an account executive sued her former brokerage firm for defamation, invasion of privacy and intentional infliction of emotional distress. The allegedly tortious acts were statements made by firm management to customers, co-workers and various securities agencies that her departure was involuntary and under "clouded circumstances." All of the acts complained of occurred after she left the firm. A divided panel of the Second Circuit reversed the district court and held the dispute nonarbitrable under Rule 347.

The *Coudert* majority began its analysis with the principle that the duty to arbitrate, as a contractual obligation, exists only as long as the agreement to do so remains in effect. The court then reasoned that the duty operates prospectively and survives termination of the arbitration agreement if the claim is "based on conditions arising *'during the term of the agreement....'"* *Coudert,* 705 F.2d at 81 (citing *Procter & Gamble Independent Union of Port Ivory v. Procter & Gamble Manufacturing Co.,* 312 F.2d 181, 186 (2d

Cir.1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963) (emphasis in original). From these principles, the court concluded that Coudert's dispute would be arbitrable if it "pertain[ed] either to employment or termination," but would not be if it "simply allege[d] tortious conduct arising after termination." *Coudert,* 705 F.2d at 82. Because Coudert resigned prior to the tortious conduct, the agreement had terminated and her claims were held to be nonarbitrable.

*Coudert* was discussed in detail in *Hovey, supra,* a recent decision of a panel of our court. *Hovey* involved the violation of an agreement prohibiting post-termination solicitation of clients. In distinguishing *Coudert, Hovey* stressed that the post-termination defamation in *Coudert* did not arise out of the broker's employment. We think there are significant differences between *Coudert* and this case which cause us to conclude that three of Morgan's claims arose out of his employment, and which satisfy the distinguishing considerations articulated in *Hovey.* We will discuss these differences presently.

We also feel there are serious weaknesses in the Second Circuit's approach. The *Coudert* majority inexplicably characterized the issue as a choice between whether the dispute pertains to employment or termination *or* simply alleges post-termination

---

**4.** *Hovey, supra* (non-solicitation clause); *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 725 F.2d 192 (2d Cir.1984) (same); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 538 F.2d 532 (3d Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976) (employee suit against firm for stock fraud under repurchase agreement); *Stokes v. Merrill Lynch, Pierce, Fenner & Smith,* 523 F.2d 433 (6th Cir.1975) (profit sharing plan); *Dickstein v. DuPont,* 443 F.2d 783 (1st Cir.1971) (finder's fee); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeCaro,* 577 F.Supp. 616 (W.D.Mo.1983) (non-solicitation clause); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Thompson,* 575 F.Supp. 978 (N.D.Fla. 1983) (unenumerated contractual provisions); *Merrill Lynch, Pierce, Fenner & Smith v. Thomsen,* 574 F.Supp. 1472 (E.D.Mo.1983) (non-solicitation clause); *Shearson Hayden Stone, Inc. v. Liang,* 493 F.Supp. 104 (N.D.Ill.1980), *aff'd,* 653 F.2d 310 (1981) (wrongful termination); *Fox v. Merrill Lynch & Co., Inc.,* 453 F.Supp. 561 (S.D.

N.Y.1978) (pension benefits); *Katz v. Shearson Hayden Stone, Inc.,* 438 F.Supp. 637 (S.D.N.Y. 1977) (indemnity for attorneys' fees incurred in securities fraud action brought against both parties); *Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 431 F.Supp. 271 (E.D.Pa.1977) (pension benefits); *Legg, Mason & Co., Inc. v. Mackall & Coe, Inc.,* 351 F.Supp. 1367 (D.D.C.1972) (unfair competition); *Isaacson v. Hayden, Stone, Inc.,* 319 F.Supp. 929 (S.D.N.Y.1970) (action to compel repurchase of stock); *Brown v. Gilligan, Will & Co.,* 287 F.Supp. 766 (S.D.N.Y.1968) (rescission of stock sale).

**5.** Other decisions have considered the arbitrability of non-commercial torts under agreements different from Rule 347. *See Fuller v. Guthrie,* 565 F.2d 259 (2d Cir.1977); *Voss v. American Federation of Musicians,* 507 F.Supp. 144 (S.D.N. Y.1980); *Tac Travel America Corp. v. World Airways, Inc.,* 443 F.Supp. 825 (S.D.N.Y.1978).

tortious conduct. This "either-or" test, however, is unfaithful to the principle, cited with approval by the *Coudert* majority, that post-termination disputes remain arbitrable if "based on conditions arising during the term of the agreement." *Coudert,* 705 F.2d at 81. If a claim is deemed an allegation of post-termination tortious conduct, the *Coudert* test forever excludes it from arbitration. A dispute's temporal posture thus becomes dispositive. As some clearly arbitrable controversies cannot by definition surface until after the agreement has terminated, *i.e.,* violation of a post-employment non-solicitation clause, this approach is clearly inadequate.[6] *Cf. Nolde Brothers, Inc. v. Local 358, Bakery and Confectionery Workers Union,* 430 U.S. 243, 249, 97 S.Ct. 1067, 1070, 51 L.Ed.2d 300 (1977) ("(t)he dispute therefore, although arising *after* the expiration of the collective-bargaining contract, clearly arises *under* that contract") (emphasis in original). *Hovey* also rejected *Coudert's* analysis as a "rigid temporal approach" to Rule 347 arbitration. *Hovey,* 726 F.2d at 1290.

■ As contrasted to the Second Circuit's approach, we believe the issue of arbitrability under Rule 347 should be guided by the two principles previously stated. Recognizing the principle that arbitrability is a matter of contract interpretation, we must define the scope of "arising out of employment or termination of employment." This language reveals that the specific source from which a controversy must arise is not the employment (or termination of the employment) *contract;* it is simply employment or termination of employment. Consequently, the plain language of Rule 347 does not limit arbitration to contractual disputes. *Cf. Mediterranean Enterprises,*

*Inc. v. Ssangyong Corp.,* 708 F.2d 1458 (9th Cir.1983) (clause limiting arbitration to "any dispute arising hereunder" applied only to disputes relating to contract interpretation and performance). To be sure, any dispute with origins in the employment contract presents a strong case for arbitration under Rule 347. However, such is not a requirement. We therefore conclude that the language "arising out of" contained in Rule 347 requires arbitration of tort as well as contract claims which involve significant aspects of the employment relationship, including but not limited to explicit contractual terms. We must thus examine the specific allegations made in Morgan's complaint.

■ Counts one and two of Morgan's complaint allege that his superiors at Smith Barney "scrounged up" complaints from his former customers and communicated them to the enforcement agencies of the NYSE and the Missouri Securities Commission. Count three alleges that the same Smith Barney personnel deliberately misinformed customers that Morgan's Missouri broker's license had been suspended. It is apparent that Morgan's claims implicate his former customers, and that the statements concern the status of his broker's license and his handling of customer accounts. A primary issue in resolving these claims is the truth of the statements. These factors reveal a significant relationship between Morgan's claims and his employment at Smith Barney. In addition, Morgan alleged that the false complaints were the direct and proximate cause of investigations of him by the NYSE Division of Enforcement and the Missouri Securities Commission. He further stated that the investigations caused him damage and rendered him unable to apply for the next higher level of the Institute of Chartered Financial Ana-

---

6. A later decision of the Second Circuit suggested that the *Coudert* holding was less dependent on the temporal posture of the claims than it was on the fact that tort claims were involved: In *Coudert,* the subject matter was a claim sounding in tort and the temporal aspects simply reinforced the quite natural doubts about whether such a dispute was covered by the purported promise to arbitrate.

*Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 725 F.2d 192, 195 (2d Cir.1984). This interpretation does not render the *Coudert* approach any more persuasive. Arbitration cannot be made dependent on the simple characterization of a dispute as a tort or contract claim. *See In Re Oil Spill By Amoco Cadiz,* 659 F.2d 789, 794 (7th Cir.1981).

lysts. These allegations directly flow from section three of Morgan's employment contract, which states that he agrees to submit himself to the jurisdiction of the same securities industry organizations which subsequently investigated him. These latter two allegations also serve to distinguish this case from the Second Circuit's decision in *Coudert.* The broker in that case simply claimed that she was defamed by false statements filed with various securities industry regulatory bodies. No investigations or loss of professional opportunity traceable to the employment contract was alleged. Given this distinction between the two cases, our recent statement in *Hovey,* that *Coudert* presented a non-arbitrable controversy because "the cause of action and the rights and duties of the parties ... were not dependent upon, nor would they be determined with reference to, the employment contract" is inapplicable to the case presented here. *Hovey,* 726 F.2d at 1290. Moreover, *Hovey* dealt only with the arbitrability of a violation of a non-solicitation agreement, and made no effort to fully catalog all of the circumstances in which Rule 347 mandates arbitration. We therefore believe that the foregoing factors lead to the conclusion that his dispute "ar[ose] out of his employment or termination of employment" with Smith Barney.[7] While we recognize that this conclusion is not free from debate, the Supreme Court's mandate that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" must be observed. *Moses H. Cone Memorial Hospital,* 103 S.Ct. at 941. In this vein, we agree with Judge Weis' statement in his *Coudert* dissent:

> The meaning of "arising out of" is not always self-evident. To a large extent, the proper interpretation depends on the specific situation presented. Thus, policy considerations often determine whether "arising out of" should be given a strict or liberal interpretation.

*Coudert,* 705 F.2d at 83 (Weis, J., dissenting).

 The final count in Morgan's complaint alleges that Smith Barney personnel told Morgan's fellow office workers that he stole things from their desks at night. Unlike the previous three counts, the connection between this dispute and Morgan's employment is tenuous. No customers or securities agencies are implicated, and no significant issue of Morgan's job performance *qua* broker is implicated. At oral argument, counsel for Smith Barney theorized that this claim arose out of Morgan's employment because he must have been attempting to steal customer "leads" that belonged to other brokers. This is both speculative and insufficient. Thus, we hold that this claim is outside the scope of Rule 347. It must be allowed to proceed to trial following arbitration of the other three counts.

The judgment of the district court is affirmed in part and reversed in part.

---

**7.** Morgan also argues that his claims are not arbitrable because he would lose his "right" to punitive damages in an arbitration proceeding. The potential unavailability of punitive damages is not a ground for denying effect to an otherwise valid agreement to arbitrate. *Baselski v. Paine Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 543 (N.D.Ill.1981).