Agostino J. ZOLEZZI,
Plaintiff-Appellant,

v.

DEAN WITTER REYNOLDS, INC., a
Delaware corporation,
Defendant-Appellee.

No. 85–6053.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1986.

Decided May 21, 1986.

R.J. Klitgaard, San Diego, Cal., Alan Neigher, Westport, Conn., for plaintiff-appellant.

Michael J. Abbott, Los Angeles, Cal., for defendant-appellee.

Before SCHROEDER and NORRIS, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, Senior District Judge.

Agostino Zolezzi, appellant, appeals a district court order referring to arbitration his action for defamation and "false light" invasion of privacy against Dean Witter Reynolds, Inc. The district court held that Zolezzi's claims arose out of his employment with Dean Witter and were subject to arbitration. We affirm.

*Facts*

In September, 1981, Dean Witter employed Zolezzi as an account executive, at which time he filed an Application for Securities Industry Registration. In it, he agreed to "arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person that is required to be arbitrated

under the rules, constitutions or bylaws of the organizations with which I register ..." Zolezzi also registered with the New York Stock Exchange, Inc. (NYSE) and the National Association of Securities Dealers (NASD).

The arbitration provision of the NYSE reads:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party ....

NYSE Rule 347.

On October 5, 1983, Zolezzi voluntarily resigned his job with Dean Witter and accepted a job with Prudential Bache, another brokerage firm. At that time, the manager of Dean Witter's San Diego office, George E. Dyer, distributed Zolezzi's customer accounts to other account executives. Dyer asserts that almost immediately Zolezzi's former customers complained to him and other Dean Witter brokers about the manner in which Zolezzi handled their accounts.

About a year later, Paul Milling, a former customer of Zolezzi, filed an action against Zolezzi and Dean Witter alleging Securities Act violations. Milling, in his deposition, repeated defamatory statements which Dyer and Robert Werve, an account executive at Dean Witter, made to him about Zolezzi's handling of his account.

Zolezzi then filed this action for defamation and "false light" invasion of privacy. He alleged that Werve told Milling that Milling had reason to file a complaint against Zolezzi for the handling of his account. He also alleged that Werve told Milling that he would not be surprised to see Zolezzi's name in the papers because Zolezzi would probably be out of the stock market business within a year, that Zolezzi might end up in jail, that Zolezzi was im-

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

moral and unethical, and that Zolezzi would eventually lose his broker's license. Zolezzi also alleged that Dyer told Milling that Zolezzi was honest until the summer of 1983 when the market slowed down, that Zolezzi had then started trading inappropriately, and that he could not understand why Zolezzi's customers did not complain about Zolezzi until after his resignation.

Dean Witter moved for an order referring Zolezzi's complaint to arbitration under the provisions of the NASD and NYSE rules. The district court found that the "alleged defamatory statements relate to and arise out of plaintiff's former employment," and the dispute therefore fell within the scope of NYSE Rule 347.

### Contentions

In this appeal, Zolezzi (appellant) contends that all intentional tort actions are outside of the scope of arbitration under NYSE Rule 347. In addition, he asserts that his intentional tort claims did not arise out of his employment because they occurred after his employment terminated.

### Standard of Review

A district court's order compelling arbitration is subject to *de novo* review. *Howard Elec. & Mech. v. Frank Briscoe Co.*, 754 F.2d 847, 849 (9th Cir.1985). Two principles guide the determination of arbitrability. First, the duty to arbitrate is a contractual obligation which is governed by general principles of contract interpretation. Second, when the language is ambiguous or unclear, any doubts about the scope of arbitration should be resolved in favor of arbitration. *Id.* at 849–50, citing *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

### Discussion

1. *Can Intentional Tort Claims be Arbitrated Under NYSE Rule 347?*

Zolezzi argues that intentional tort claims are not arbitrable unless the arbitration agreement contains a clear statement that tort actions are included. There is no merit to this argument. The Supreme Court held that tort claims are within the scope of arbitration agreements and that express exclusion of tort claims in a broadly worded arbitration agreement is required. *See Prima Paint v. Flood & Conklin*, 388 U.S. 395, 406–07, 87 S.Ct. 1801, 1807–08, 18 L.Ed.2d 1270 (1967); *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). NYSE Rule 347 is broad in scope and does not contain an express exclusion of tort claims.

2. *Did Zolezzi's Intentional Tort Claims Arise out of his Employment?*

The circuits are divided on whether intentional torts which arise out of a broker's employment are subject to arbitration under NYSE Rule 347. The district court, relying on *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir. 1984), found that Zolezzi's tort claims arose out of his employment and held that the dispute is subject to arbitration.

In *Morgan*, plaintiff voluntarily resigned from his position as an account executive with Smith Barney. Almost two years later, plaintiff filed an action in tort and slander. He alleged that one of his superiors had told a former customer that Smith Barney was investigating Morgan's books and that Morgan had been terminated under suspicious circumstances. He also told others that Morgan's broker license had been suspended and had told Morgan's co-workers that he stole things from their desks at night. Morgan also alleged that Smith Barney had "scrounged" up complaints from his former customers and communicated them to the NYSE. *Id.* at 1165. The district court compelled arbitration under NYSE Rule 347, and the appellate court affirmed except on plaintiff's claim that co-workers were told that he stole things out of their desks at night. The court held that this was not related to his employment and was outside of Rule 347. *Id.* at 1168.

In *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir.1983), the case upon which Zolezzi relies, plaintiff had

been employed as an account executive for Paine Webber. She became dissatisfied with her job and expressed an intention to resign. When the office manager heard of her intentions, he terminated her as of an earlier date. He also told her co-workers, brokers, and clients that she had been fired for cause, and he filed termination forms with the SEC, the NYSE, and other government agencies. *Id.* at 79–80.

Plaintiff filed an action against Paine Webber for defamation, invasion of privacy, and emotional distress. On motion of Paine Webber, the district court entered an order compelling arbitration under NYSE Rule 347. *Id.* The Second Circuit Court of Appeals, by a majority vote, reversed. *Id.* at 82.

The Court of Appeals held that although the allegations of plaintiff's complaint rested on false statements that plaintiff was terminated, the dispute itself did not relate to employment or termination of employment because the tortious acts complained of all occurred after plaintiff's termination. *Id.*

The *Coudert* court relied on the general law in the Second Circuit that there is no duty to arbitrate a grievance arising after the termination of an agreement between the parties, even if the expired agreement included an arbitration clause. *Id.* at 81, citing *Korody Marine Corp. v. Minerals & Chemicals Philipp Corp.*, 300 F.2d 124, 125 (2d Cir.1962). This rule is contrary to the Ninth Circuit holding in *O'Neel v. National Ass'n of Securities Dealers*, 667 F.2d 804, 806–07 (9th Cir.1982), which provides that a party's obligation to arbitrate is not extinguished by his resignation from employment.

The court in *Morgan* criticized the analysis of the *Coudert* court and specifically rejected the "either-or" test of "whether the dispute pertains to employment or termination or simply alleges post-termination tortious conduct." *Morgan, supra,* 729 F.2d at 1167. The court broadly interpreted the phrase "arising out of employment or termination of employment" and held that the language requires "arbitration of tort as well as contract claims which in-

volve significant aspects of the employment relationship, including but not limited to explicit contractual terms." *Id.*

Judge Weis, the dissenting judge in *Coudert,* adopted the view of the Ninth Circuit and argued that the dispute is not removed from NYSE Rule 347 merely because the communications occurred after plaintiff's last day of work. *Coudert, supra,* 705 F.2d at 84.

The Sixth Circuit, in *Aspero v. Shearson American Exp., Inc.,* 768 F.2d 106 (6th Cir.1985), also rejected the reasoning of the *Coudert* court. Aspero resigned from her position as a registered broker for defendant after her superior threatened to fire her for making unauthorized trades with a client's account. *Id.* at 107. At the time Aspero resigned, her superior promised to treat her departure as a voluntary resignation and to provide her with good references for future employers. Instead, he told several potential employers that she had been fired for unauthorized trading rules violations and filed termination forms with various exchanges and state offices. *Id.*

Aspero filed an action for defamation, invasion of privacy and intentional infliction of emotional distress. The district court ordered arbitration under NYSE Rule 347 and the appellate court affirmed. The appellate court held that "although it is created by contract, the duty to arbitrate does not necessarily end when the contract is terminated." *Id.* at 108. Adopting the analysis of the *Morgan* court, the Sixth Circuit reasoned that the "proper question is whether resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual relationship." *Id.* at 109.

■ We reject the reasoning of the *Coudert* court and adopt the reasoning of *Morgan* and *Aspero,* the Eighth and Sixth Circuit opinions. Here, plaintiff's claims are based on statements which relate to his handling of customer accounts while employed by Dean Witter and possible consequences of his actions. In accordance with *Morgan* and *Aspero* and the federal policy

of resolving ambiguities in favor of arbitrability of disputes as set forth in *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), we find that plaintiff's claims arose out of his employment with Dean Witter and are therefore subject to arbitration under NYSE Rule 347.

AFFIRMED.