James A. STONE, Plaintiff,

v.

PENNSYLVANIA MERCHANT GROUP, LTD., Defendant.

Civil Action No. 95–3925.

United States District Court,
E.D. Pennsylvania.

Dec. 16, 1996.

proposed subclasses of PPSP claimants.

Larry M. Keller, Gary Green, Philadelphia, PA, for Plaintiff.

Gary R. Battistoni, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff, James A. Stone ("Stone"), a former employee and registered securities rep-

resentative of Defendant, Pennsylvania Merchant Group, Ltd. ("Merchant"), brought this action for breach of employment contract, defamation, and violation of Pennsylvania's Wage Payment and Collection Law, Pa.Stat. Ann. tit. 43, §§ 260.1–.12 (1992). Merchant moves for an order dismissing the complaint of Stone, under Federal Rule of Civil Procedure 12(b)(6), or granting summary judgment under Federal Rule of Civil Procedure 56, or in the alternative, staying this action and compelling arbitration under the Federal Arbitration Act (the "FAA"), 9 U.S.C.A. §§ 1–16 (West 1970 & Supp.1996). For the reasons stated below, I will stay this action pursuant to § 3 of the FAA until arbitration has been had between the parties pursuant to the terms of the arbitration agreement.

## BACKGROUND

Merchant employed Stone as a securities analyst during a period beginning in June 1992 and ending in November 1994. Following the termination of Stone's employment relationship with Merchant, Stone filed this action in diversity against Merchant on June 23, 1995, seeking compensatory and punitive damages, statutory liquidated damages, and reasonable attorney's fees. In the complaint, Stone alleges that the parties entered into two employment contracts, in May 1992 and June 1994 respectively, in which Merchant promised Stone various minimum levels of compensation and bonuses. In Counts One and Two of the complaint, Stone alleges that Merchant breached the employment contracts by failing to pay the full amount of compensation and bonuses due under the contracts. In Count Three of the complaint, Stone sets forth a tort/defamation claim in which he alleges that Merchant intentionally gave him false information about a company it was promoting so that Stone would prepare a falsely positive report about the company's prospects. He alleges that Merchant profited by selling the company's stock at artificially high prices, and that when the company subsequently failed, Stone's reputation as a reliable analyst in the industry was damaged. Finally, in Count Four, Stone seeks to recover unpaid wages, liquidated damages, and reasonable attorney's fees under Pennsylvania's Wage Payment and Collection Law.

Shortly after he commenced employment with Merchant, Stone executed a Uniform Application for Securities Industry Registration or Transfer, commonly referred to as a Form U–4. The Form U–4 is a generic application that is used to register with one or more self-regulatory organizations and state jurisdictions. In Item 10 of the U–4 application, Stone indicated that he desired registration with the National Association of Securities Dealers ("NASD") and with the jurisdictions of New York and Pennsylvania. The Form U–4 identifies Merchant as Stone's current firm with which he was employed. On the signature page of the U–4 application, ten paragraphs are located immediately above the applicant signature line and immediately below a bold heading stating that "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY." Paragraph 2 states in relevant part:

in consideration of the jurisdictions and organizations receiving and considering my application, I submit to the authority of the jurisdictions and organizations and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the jurisdictions and organizations as they are or may be adopted, or amended from time to time.

Furthermore, paragraph 5 of the U–4 states:

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time....

Stone signed the Form U–4 on the applicant signature line immediately below these paragraphs and filled in the date as June 22, 1992. No signature line for the applicant's firm exists in this portion of the Form U–4.

On July 18, 1995, Merchant moved for an order staying this action pending arbitration on the basis of the Form U–4 that Stone executed. On February 28, 1996, I denied this motion without prejudice because the materials the parties had submitted were

insufficient to decide the motion. On March 13, 1996, Merchant renewed its motion for arbitration, the instant motion under consideration now, and submitted additional materials in support of its motion. On April 16, 1996, Stone filed a response opposing Merchant's motion and also submitted additional materials in opposition to the motion.

Merchant contends that it is entitled to an order under the FAA staying this action pending arbitration because Stone agreed in the Form U–4 application to arbitrate any dispute with his firm that is required to be arbitrated under the rules of the organizations with which Stone sought to register. Merchant claims that because Stone sought registration with the NASD, and because the NASD rules require arbitration of the claims at issue in this action, Stone must resolve his claims against Merchant through arbitration rather than in federal court.

Stone contends that Merchant is not entitled to a stay under the FAA because he claims that Stone never entered into an agreement with Merchant to arbitrate and because even if a valid agreement to arbitrate does exist between Stone and Merchant, the particular claims asserted in Stone's complaint are not within the scope of that arbitration agreement. Stone claims that Merchant has no contractual standing to enforce the Form U–4 application because Stone was not a party to the agreement, which was an agreement exclusively between Stone and the NASD, and because Merchant did not give Stone any independent consideration for signing the Form U–4, whether in the form of employment or in the assumption of a mutuality of obligation. Stone also argues that even if Merchant does have contractual standing to enforce the agreement, the NASD rules do not require arbitration of

employment-related disputes, and furthermore, that even if they do include employment-related disputes, his claims for tort/defamation and his claims under Pennsylvania's Wage Payment and Collection Law are not employment-related.

## DISCUSSION

Section 2 of the FAA states that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (West 1970). Section 3 of the FAA, the provision under which Merchant seeks relief, provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

9 U.S.C.A. § 3 (West 1970). Thus, my inquiry at this stage is limited: I must determine whether an agreement to arbitrate exists and whether the claims at issue in this action are referable to arbitration under that agreement; if they are, I must stay this action until arbitration has been had pursuant to the terms of the agreement.

I will first address Stone's claim that Merchant has no contractual standing to enforce the U–4 arbitration agreement.[1] Because I

---

1. Stone also contends that regardless of who may enforce the Form U–4 arbitration agreement, the contract itself is too vague and illusory to create an enforceable contract obligation. He contends that the agreement is illusory because an applicant could seek registration with several organizations and that the applicant could thus be agreeing to arbitrate under several different codes of arbitration covering divergent categories of disputes. *See* Pl.'s Resp. Def.'s Mot. Dismiss Compl. at 17–18. Stone himself, however, sought registration only with the NASD and thus

the U–4 arbitration agreement at issue here is not plagued by the hypothetical problems that Stone suggests. Moreover, I fail to see any fatal inconsistency posed by an agreement to arbitrate under the rules of each organization in which the applicant seeks membership. There is nothing illusory or vague in agreeing to arbitrate disputes that the New York Stock Exchange requires to be arbitrated, even if the NASD, which the applicant also wants to join, does not, or vice versa; Stone makes no claim that any of the organizations

conclude that Merchant may enforce the agreement as a third-party beneficiary, I will then address Stone's claim that the disputes at issue in this action do not fall within the scope of the U–4 arbitration agreement.

## I. Merchant's Contractual Standing to Enforce the U–4 Arbitration Agreement

■ Stone contends that Merchant has no contractual standing to enforce the U–4 arbitration agreement because Merchant was not a party to the U–4 agreement and because Merchant allegedly gave Stone no consideration in exchange for executing the U–4 application. Even if no agreement to arbitrate existed directly between Merchant and Stone, an issue I need not decide here, Merchant may enforce the U–4 arbitration agreement as an intended third party beneficiary of the agreement.[2]

It is well established in the federal courts that an arbitration agreement may be enforced by or against a nonsignatory party under traditional principles of agency or contract law. *See, e.g., Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1121–22 (3d Cir.1993) (requiring signatory pension plan trustees to arbitrate their ERISA claims against a nonsignatory financial consultant because the consultant was an agent of a brokerage firm that signed the arbitration agreement with the trustees); *Barrowclough v. Kidder, Peabody & Co.,* 752 F.2d 923, 938 (3d Cir.1985) (binding nonsignatory parties to an arbitration clause contained in plaintiff's broker registration agreement with the New York and American Stock Exchanges and explaining that "a variety of non-signatories of arbitration agreements have been held to be bound by such agreements under ordinary common law contract and agency principles"), *overruled on other grounds by Pritzker,* 7 F.3d 1110; *Okcuoglu v. Hess, Grant & Co.,* 580 F.Supp. 749, 751–53 (E.D.Pa.1984) (permitting a nonsignatory introducing brokerage firm to enforce arbitration clauses in customer and op-

tions agreements between plaintiffs and two clearing brokerage firms because the introducing brokerage firm was an agent of the clearing brokerage firms); *McPheeters v. McGinn, Smith & Co.,* 953 F.2d 771, 772–73 (2d Cir.1992) (per curiam) (holding that a nonsignatory introducing brokerage firm could not enforce an arbitration clause in a customer agreement between the plaintiff and a clearing brokerage firm because the introducing brokerage firm failed to show that it was an agent of the clearing brokerage firm or a third-party beneficiary of the arbitration agreement); *Nesslage v. York Sec., Inc.,* 823 F.2d 231, 233–34 (8th Cir.1987) (holding that a nonsignatory introducing brokerage firm and its account representative could enforce an arbitration clause in a margin agreement between the plaintiff and a clearing brokerage firm because the introducing brokerage firm and its account representative were third-party beneficiaries of the margin agreement); *Letizia v. Prudential Bache Sec., Inc.,* 802 F.2d 1185, 1187 (9th Cir.1986) ("Other circuits have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles."); *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 795 F.2d 1111, 1116–17 (1st Cir.1986) (holding that a nonsignatory introducing brokerage firm could not enforce an arbitration clause in a customer agreement between the plaintiffs and a clearing brokerage firm because the introducing broker failed to show that it was an agent of the clearing broker or that it was a third-party beneficiary of the customer agreement); *Gould v. Sidel,* [1990–1991 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,667, at 98, 126–28, 1990 WL 209641 (S.D.N.Y.1990) (same); *Ahn v. Rooney, Pace Inc.,* 624 F.Supp. 368, 370–71 (S.D.N.Y.1985) (same). Thus, even if Merchant is not a party to the U–4 arbitration agreement that Stone signed, it can enforce the agreement against Stone if it can show under traditional principles of

---

prohibit arbitration of all disputes that they do not affirmatively require to be arbitrated.

**2.** Although Merchant failed to address Stone's lengthy arguments that Merchant has no contrac-

tual standing to enforce the U–4 arbitration agreement, I believe that the circumstances of this case require consideration of Merchant's status as a third-party beneficiary.

contract law that it is an intended third-party beneficiary of the arbitration agreement.

To determine whether Merchant is a third-party beneficiary, I must turn to state law. The United States Supreme Court explained in *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), that state law governs general questions of enforceability of arbitration agreements. *See id.* at 492 n. 9, 107 S.Ct. at 2527 n. 9. Like the case at hand, the plaintiff in *Perry* objected to arbitration of his claims under a U–4 arbitration agreement against certain of the defendants because he claimed that they were not parties to the arbitration agreement and thus that they had no contractual standing to enforce the agreement. *See id.* at 485, 487, 107 S.Ct. at 2523, 2524. Although the Supreme Court did not decide this issue, it did explain the applicable choice-of-law principles for such a claim:

> [T]he text of § 2 [of the FAA] provides the touchstone for choosing between state-law principles and the principles of federal common law envisioned by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law,* 'save upon such grounds as exist at law or in equity for the revocation of *any* contract.' Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.

*Id.* at 492 n. 9, 107 S.Ct. at 2527 n. 9 (citations omitted). The Supreme Court explained that only if a "state-law principle ... takes its meaning precisely from the fact that a contract to arbitrate is at issue" will federal law displace state law. *See id.* Here, the question whether Merchant may enforce the arbitration clause in the U–4 application as a third-party beneficiary is a general inquiry of contract enforceability and does not involve anything peculiar to the fact that the U–4 contains an arbitration clause. Thus, state law is controlling with respect to Merchant's

contractual standing to enforce the arbitration clause as a third-party beneficiary.

■ Under Pennsylvania law,[3] a party is an intended third-party beneficiary if "both parties to the contract express an intention to benefit the third party in the contract itself," *Scarpitti v. Weborg,* 530 Pa. 366, 609 A.2d 147, 150 (1992), or if " 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.' " *Id.* (quoting the Restatement (Second) of Contracts § 302(1)(b) (1979), which had been adopted "as the law of Pennsylvania").

■ In this case, Stone promised the NASD that he would arbitrate any dispute arising between himself and his firm, Merchant, that was required to be arbitrated under NASD rules. Thus, by explicitly referring to Stone's "firm," which was identified elsewhere in the U–4 application as Merchant, the parties expressly contemplated in the contract itself that Merchant would be a beneficiary of the agreement. Furthermore, the NASD rules require arbitration, in relevant part, only *"at the instance of ... a member against a person associated with a member."* § 8(a)(2), NASD Manual (CCH) ¶ 3708 (1995) (emphasis added). In other words, the NASD requires Stone to arbitrate only when Merchant wants Stone to arbitrate. If Merchant does not request arbitration, the NASD rules do not require Stone to arbitrate the dispute, and Stone is free to litigate his claims against Merchant in a judicial forum. Thus, by exacting a promise from Stone that he would perform whenever, and only whenever, Merchant wanted Stone to perform, the NASD revealed an intent to provide Merchant with the promised performance, arbitration, whenever Merchant viewed such performance as beneficial. Under these circumstances, I find that the NASD intended to give Merchant the benefit of Stone's promise to arbitrate and that recognizing Merchant's right under the con-

---

**3.** Because Stone argues that Pennsylvania law is applicable to this contract and Merchant offers no objection, I will apply Pennsylvania law.

tract to Stone's performance of his promise is appropriate to effectuate the intentions of the parties. Accordingly, Merchant is an intended third-party beneficiary of the U-4 arbitration agreement under Pennsylvania law and may therefore enforce the agreement against Stone.[4]

## II. Arbitrability of Stone's Claims

 Having concluded that Merchant may enforce the arbitration agreement as an intended third-party beneficiary, I must now decide whether the claims at issue in this action fall within the scope of the U-4 arbitration clause. Arbitration is a matter of contract, and the parties are therefore required to arbitrate only those particular disputes that they have agreed to arbitrate. *See PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990) (citing *AT & T Technologies v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). In deciding whether the parties have agreed to arbitrate a particular dispute, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options v. Kaplan,* 514 U.S. 938, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). "[Q]uestions of arbitrability," however, "must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). If the scope of an arbitration agreement is ambiguous, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25, 103 S.Ct. at 941.

In the U-4 application, Stone agreed to "arbitrate any dispute, claim or controversy

that may arise between me and my firm ... that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time." Stone indicated the NASD in Item 10 of the U-4 application. Stone also agreed to "submit to the authority of the jurisdictions and organizations" indicated in Item 10 and "to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the jurisdictions and organizations as they are or may be adopted, or amended from time to time."

Part I of the NASD Code of Arbitration Procedure provides that "any dispute, claim, or controversy ... arising out of the employment or termination of employment of associated person(s) with any member" is eligible for arbitration. § 1, NASD Manual (CCH) ¶ 3701 (1995). Part II of the NASD Code then provides, in relevant part, that "[a]ny dispute, claim, or controversy eligible for submission under Part I of this Code between or among members and/or associated persons ... arising out of the employment or termination of employment of such associated person(s) with such member" is required to be arbitrated if either the member or the associated person requests arbitration. § 8, NASD Manual (CCH) ¶ 3708 (1995). The parties do not dispute that Merchant is a member of the NASD, that Stone is a person associated with a member of the NASD, and that Merchant requests arbitration under the NASD Code of Arbitration. Thus, if the claims set forth in Stone's complaint against Merchant arise out of his employment or the termination of his employment with Merchant, Stone is required under the NASD Code of Arbitration to arbitrate those claims.

---

**4.** Stone contends that even if the Form U-4 is an agreement to arbitrate that Merchant can enforce, the Form U-4 governs only the claims arising out of the first employment contract, which was entered into in May 1992, and not the second employment contract, which was entered into in June 1994. Stone argues that this conclusion follows from the fact that execution of the second employment contract was not accompanied by execution of a new Form U-4. *See* Pl.'s Resp. Def.'s Mot. Dismiss Compl. at 11 n. 11. This argument fails, however, because the Form

U-4 was not a contract with Merchant, as Stone himself argues, but a separate contract with the NASD. *See id.* at 7–17. Therefore, the termination of Stone's first employment contract with Merchant and the execution of a second employment contract with Merchant does not revoke Stone's independent contract with the NASD. *See In re Prudential Ins. Co. of Am. Sales Practices Litigation,* 924 F.Supp. 627, 635 (D.N.J. 1996); *O'Donnell v. First Investors Corp.,* 872 F.Supp. 1274, 1277 (S.D.N.Y.1995).

■ Stone contends, however, that the U–4 arbitration agreement does not require him to arbitrate employment-related disputes. He argues that the NASD Code of Arbitration did not cover employment-related disputes until October 1993, when the Code was amended to explicitly include employment-related disputes, more than a year after he signed the U–4 agreement. He contends that he is bound to arbitrate only those disputes that were required to be arbitrated under the NASD Code at the time he signed the U–4 application and that, in his view as just stated, the Code did not cover employment-related disputes at that time. I find this contention unpersuasive because Stone agreed to arbitrate all disputes required to be arbitrated under the NASD rules and to comply with all NASD rules "as they ... may be adopted, or amended from time to time." The NASD rules, as amended, require Stone to arbitrate employment-related disputes, and thus, as he promised, he must arbitrate them.[5] *See In re Prudential Ins. Co. of Am. Sales Practices Litigation,* 924 F.Supp. 627, 636–39 (D.N.J.1996) ("Given the agents' explicit agreement to arbitrate under the NASD Code 'as amended,' the Court must look to the rules as they existed at the time the agents filed suit, and not before."); *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 320–21 (9th Cir.1996) (applying the post-amendment NASD Code to claims brought by a securities sales representative who had signed a U–4 application before the Code was amended on the basis of her agreement to comply with the NASD rules "as may be amended from time to time"); *Pitter v. Prudential Life Ins. Co. of Am.,* 906 F.Supp. 130, 134 (E.D.N.Y.1995); *Wojcik v. Aetna Life Ins. & Annuity Co.,* 901 F.Supp. 1282, 1286–91 (N.D.Ill.1995) ("[W]e hold that Wojcik's agreement in paragraph 2 of the Form U–4, to comply with and abide by all rules as they are and may be amended, encompasses amendments to NASD procedural rules governing arbitration."), *order clarified,* 916 F.Supp. 729 (N.D.Ill.1996); *Scher v. Equitable Life Assurance Soc'y of the United States,* 866 F.Supp. 776, 778 (S.D.N.Y.1994) (concluding that because the plaintiff "agreed to comply with the NASD rules 'as they are and may be adopted, changed or amended from time to time,'" he "must comply with the NASD Code as it existed at the time he commenced his action").

Stone relies on *Kresock v. Bankers Trust Co.,* 21 F.3d 176 (7th Cir.1994) to support his claim that he should not be bound by the amended NASD Code of Arbitration. *Kresock* is distinguishable, however, because it involved a plaintiff who had filed her Title VII action in federal court before the NASD Code of Arbitration had been amended to explicitly include employment-related disputes. *See id.* at 177. In explaining its decision not to apply the amended NASD rules to the plaintiff's case, the Seventh Circuit stated that a contrary decision would give "an organization such as the NASD" an incentive, after litigation had already commenced, to "amend its rules to force one or both parties to do something (like arbitrate) that one or both never agreed to do." *Id.* at 179. Here, of course, application of the amended NASD rules provides no such incentive because the NASD rules were amended before Stone filed this lawsuit. Although the Seventh Circuit does suggest in

---

**5.** Although I offer no opinion on the issue, I note that there is a substantial body of caselaw that finds employment-related disputes arbitrable under the pre-amendment NASD Code of Arbitration. *See Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 798–800 (10th Cir.1995); *Kidd v. Equitable Life Assurance Soc'y of the United States,* 32 F.3d 516, 519–20 (11th Cir.1994); *Pitter v. Prudential Life Ins. Co. of Am.,* 906 F.Supp. 130, 136–38 (E.D.N.Y.1995); *O'Donnell v. First Investors Corp.,* 872 F.Supp. 1274, 1277–78 (S.D.N.Y. 1995); *see also* 58 Fed.Reg. 39,070, 39,071 (1993) (statement of the NASD accompanying proposed 1993 amendments to the NASD Code of Arbitration) ("The NASD has taken the position that employment disputes are arbitrable under Section 8, but in order to clear up any ambiguity, it is proposing the changes described above, which parallel the NYSE rule language."); 52 Fed.Reg. 9232, 9232 (1987) (statement of the NASD) (proposing an amendment to the NASD Code of Arbitration that would prohibit members from requiring associated persons to waive arbitration, partly out of concern that a waiver would "have the effect of denying registered representatives access to the NASD's arbitration facilities in case of an *employment dispute* between them and a member firm." (emphasis added)). *But see Kresock v. Bankers Trust Co.,* 21 F.3d 176, 178–79 (7th Cir.1994); *Farrand v. Lutheran Bhd.,* 993 F.2d 1253, 1254–55 (7th Cir.1993).

other portions of its opinion in *Kresock* a somewhat broader rationale, *see id.* ("Courts, however, will not presume retroaction because it is unfair to hold private parties accountable for rules which were not in effect at the time their relevant conduct took place."), I agree with the other courts that have addressed this issue that *Kresock* is a sensible decision when confined to its facts, but that its application is unpersuasive when used to negate the plain meaning of the U–4 agreement to comply with all NASD rules "as they ... may be adopted, or amended from time to time." *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litigation,* 924 F.Supp. at 637–38; *Wojcik,* 901 F.Supp. at 1286–91.

■ Having determined that Stone agreed to arbitrate employment-related disputes with Merchant, I must now determine whether Stone's claims against Merchant are employment-related. Stone concedes that the breach of employment contract claims contained in Counts One and Two of the complaint are arbitrable if the U–4 arbitration agreement covers employment-related disputes, *see* Pl.'s Resp.Def.'s Mot. Dismiss Compl. at 25–26, which I have found that it does. Stone contends, however, that his defamation claim in Count Three and his claim under Pennsylvania's Wage Payment and Collection Law, Pa.Stat.Ann. tit. 43, §§ 260.1–.12 (1992), in Count Four do not fall within the scope of the U–4 arbitration agreement because neither claim arises out of his employment or the termination of his employment with Merchant. *See* Pl.'s Resp. Def.'s Mot. Dismiss Compl. at 25–27. I will address each claim in turn.

The federal courts have routinely held that a variety of tort claims, including defamation claims, are arbitrable as claims "arising out of the employment" relationship within the meaning of either the NASD rules or the NYSE rules upon which they are based, *see* 58 Fed.Reg. 39,070, 39,071 (1993). The prevailing test applied by the courts in interpreting this language is whether the tort claims involve significant aspects of the employment relationship or whether resolution of the tort claims will require an evaluation of either the employee's or the employer's performance in the course of the employment relationship. *See, e.g., Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163, 1167–68 (8th Cir.1984) ("We therefore conclude that the language 'arising out of [employment]' contained in Rule 347 [of the New York Stock Exchange] requires arbitration of tort as well as contract claims which involve significant aspects of the employment relationship...."); *Aspero v. Shearson Am. Express, Inc.,* 768 F.2d 106, 109 (6th Cir.) (holding that a dispute "aris[es] out of the employment" under NYSE Rule 347 if "resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual relationship" and affirming an order requiring arbitration of defamation claims based on the employer's statements that the plaintiff had been fired for unauthorized trading), *cert. denied,* 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985); *Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447, 1450–51 (9th Cir.1986) (affirming an order requiring arbitration of defamation claims under NYSE Rule 347 and expressly adopting the standards set forth in *Morgan* and *Aspero* ); *Fleck v. E.F. Hutton Group, Inc.,* 891 F.2d 1047, 1051–53 (2d Cir.1989) (reversing an order denying arbitration of defamation claims under NYSE Rule 347 and adopting the approach set forth in *Morgan* and *Aspero* ); *Weinstein v. Equitable Life Assurance Soc'y of the United States,* NO. CIV. A. 96–CV–3614, 1996 WL 557321, at *2– 3 (E.D.Pa. Sept. 26, 1996) (requiring arbitration under the NASD rules of claims for defamation, false light privacy, and negligence); *Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 664 F.Supp. 969, 973 (E.D.Pa.1987) (requiring arbitration under NYSE Rule 347 of a claim that the defendant wilfully and maliciously impugned the plaintiff's business reputation); *Vitone v. Metropolitan Life Ins. Co.,* NO. CIV. A. 95–0367L, 1996 WL 600824, at *3 (D.R.I. Oct. 17, 1996) (requiring arbitration under the NASD rules of claims for defamation and false light invasion of privacy); *Kurschus v. PaineWebber, Inc.,* No. 95–CIV–1652 PKL, 1996 WL 389303, at *4–5 (S.D.N.Y. July 11, 1996) (requiring arbitration under both the NASD and NYSE rules of claims for defamation,

prima facie tort, and fraud); *Zdeb v. Shearson Lehman Bros.*, 674 F.Supp. 812, 814–16 (D.Colo.1987) (requiring arbitration under NYSE Rule 347 of tort claims for conversion, interference with contractual relations, and outrageous conduct). Thus, to determine whether Stone's defamation claims are arbitrable as "arising out of" his employment with Merchant, I must determine whether Stone's defamation claim involves significant aspects of his employment relationship with Merchant or if resolution of his defamation claim will require an evaluation of Stone's or Merchant's performance in the course of his employment with Merchant.

Stone's defamation claim is based on the alleged facts that Merchant conspired with Image Business Systems ("IBS"), a company it was promoting, to "feed Plaintiff false, inaccurate, and inflated information about the company's post-initial public offering prospects, thus inducing Plaintiff to prepare unwittingly and innocently, a positive but false report that was used by Defendant's salesmen to promote the sale of IBS in the market." Complaint ¶ 27. When the company subsequently failed and the inaccuracy of Stone's report became apparent, Stone's "reputation as an analyst in the said industries was tarnished and injured." Complaint ¶ 28.

In essence, then, Stone's claim is that Merchant assigned him to write a false report, which hurt his reputation as a reliable analyst when the report's falsity became known in the industry. Stone prepared the report as part of his job as a research analyst with Merchant. It is this report and the conditions surrounding its preparation that form the basis of Stone's defamation claim against Merchant; thus, Stone's defamation claim certainly involves significant aspects of his employment with Merchant. Moreover, resolution of his claim will require, among other things, an evaluation of what information about IBS Merchant gave Stone in the course of his employment, the degree of independent verification of that information that was expected of an employee in Stone's position, whether Stone's report was a fair representation of the information that Merchant gave him or that he independently gathered, and whether Stone knew or should have known that the information embodied in the report was false. Resolving these questions will require a significant evaluation of Stone's performance of his duties in the course of his employment with Merchant. Accordingly, I find that Stone's defamation claim is a claim "arising out of" his employment relationship with Merchant and that it is therefore arbitrable under the NASD Code of Arbitration.

Stone contends, however, that his defamation claim does not arise out of his employment with Merchant because it states "allegations of tort" that "have nothing to do with the contract entered into between PMG [Merchant] and Stone." *See* Pl.'s Resp. Def.'s Mot. Dismiss Compl. at 27. This contention fails because Stone agreed to arbitrate all disputes arising out of his employment, not merely those arising out of his employment contract. *Cf. Morgan,* 729 F.2d at 1167 (interpreting NYSE Rule 347's language requiring arbitration of disputes "arising out of the employment or termination of employment" to mean that "the specific source from which a controversy must arise is not the employment ... *contract;* it is simply employment or termination of employment" and thus that "Rule 347 requires arbitration of tort as well as contract claims which involve significant aspects of the employment relationship"). As already discussed, the federal courts have had no problem concluding that a wide variety of tort claims, including defamation claims, "arise out of" employment, as long as the claims involve significant aspects of the employment relationship, as I have found that Stone's claims do.

Stone also cites *Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78 (2d Cir.1983), and *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 742 F.Supp. 1359 (N.D.Ill.1990), in support of the claim that his defamation claim does not arise out of his employment relationship with Merchant. Neither decision is availing. *Coudert* was decided largely on the fact that the alleged tortious conduct was committed after the plaintiff had already voluntarily resigned from her job and thereby ended the employment relationship. *See Coudert,* 705 F.2d at

82 (explaining that the plaintiff ended the employment relationship "before the alleged false statements were made" and that it was "a short road from here to the conclusion that this controversy is not controlled by an arbitration clause that governs only employment or termination"). Thus, *Coudert* is factually distinguishable from the case at hand because the alleged tortious conduct occurred during the course of Stone's employment relationship with Merchant. More importantly, the Second Circuit has subsequently rejected its approach in *Coudert* as "too cramped." *Fleck*, 891 F.2d at 1051. The Second Circuit upheld arbitration in *Fleck* on facts similar to those in which it had denied arbitration in *Coudert* and expressly adopted the broader interpretation of "arising out of" employment that had been advanced by the Eighth Circuit in *Morgan*, 729 F.2d 1163, and the Sixth Circuit in *Aspero*, 768 F.2d 106. *See Fleck*, 891 F.2d at 1052–53. As discussed above, under the standards set forth in *Morgan* and *Aspero* and subsequently adopted in *Fleck*, Stone's defamation claim is arbitrable.

As for *Zechman*, the second case that Stone cites in support of his contention that his defamation claim is not arbitrable, Stone's reliance on this case is misplaced. *Zechman* involved a dispute between two members of the Chicago Board of Trade ("CBOT") who had agreed to arbitrate any dispute "aris[ing] out of the *Exchange business* of such parties." *See Zechman*, 742 F.Supp. at 1362 (emphasis added). The court concluded that the defamation claims, like other of the plaintiff's claims which the court had found to be primarily employment-related, were too far removed from the exchange business of the parties to fall within the scope of exchange-related arbitration provision. *See id.* at 1370. Because the issue in this case is whether Stone's defamation claim is employment-related, rather than whether it is exchange-related under CBOT rules, *Zechman* provides no support for Stone's contentions.

■ Little needs to be said with respect to Stone's claim under Pennsylvania's Wage Payment and Collection Law. The only argument Stone advances for why these claims are not arbitrable is that *Zechman* held claims under Illinois's Wage Payment and Collection Law nonarbitrable. *See* Pl.'s Resp. Def.'s Mot. Dismiss Compl. at 26. As already discussed, *Zechman* has no bearing on this case because it involved an interpretation of a CBOT rule requiring arbitration of disputes concerning the exchange-related business of CBOT members, rather than employment-related disputes. Indeed, the court in *Zechman* held that the statutory wage claims were nonarbitrable precisely because they "turn exclusively on the independent employer-employee relationship" and thus were "too remote" to implicate the parties' exchange-related business. *See Zechman*, 742 F.Supp. at 1369. Because Stone has offered no other reason for why these claims are not arbitrable, and because I find no real issue that these claims arise out of Stone's employment with Merchant, I conclude that Stone's claims under Pennsylvania's Wage Payment and Collection Law are arbitrable.

## CONCLUSION

In conclusion, I have found that Merchant may enforce the U–4 arbitration agreement as an intended third-party beneficiary, that Stone agreed to arbitrate all disputes with Merchant arising out of his employment or the termination thereof, and that all of the claims Stone alleges in his complaint against Merchant arise out of his employment with Merchant. Therefore, because I find that all of the issues involved in this action are referable to arbitration under the written agreement in the U–4 application to arbitrate, I will stay the proceedings in this action under § 3 of the FAA until arbitration has been had between the parties pursuant to terms of the U–4 arbitration agreement.