**Jerry A. GIBBS, Plaintiff,**

v.

**PFS INVESTMENTS, INC.,**

**and**

**Primerica Life Insurance Company, Inc., Defendants.**

**No. 2:02cv266.**

United States District Court, E.D. Virginia, Norfolk Division.

July 11, 2002.

Walter Ware Morrison, Virginia Beach, VA, for plaintiff.

Edwin Ford Stephens, Christian & Barton, LLP, Richmond, VA, for defendants.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on defendants' motion to dismiss and compel arbitration or, in the alternative, motion to stay. For the reasons set forth below, defendants' motion to compel arbitration is GRANTED. Defendants' motion to dismiss is GRANTED. Defendants' motion to stay is moot.

### I. Factual and Procedural History

On May 14, 1999, plaintiff Jerry A. Gibbs applied for employment with PFS Investments and Primerica Life, both of which are affiliates of Primerica Financial Services, Inc. ("PFS"). PFS Investments is a securities broker-dealer and member of the National Association of Securities Dealers ["NASD"]. Primerica Life is an insurance company. Gibbs applied to become an independent contractor sales agent for the two PFS affiliates.

In connection with the application for employment, Mr. Gibbs completed a form entitled "Personal Financial Analyst Business Application." ("business application") (Def.'s Brief, Ex. C.) Page Four of the business application contained the following question: "Have you *ever* been charged with, convicted of, pled guilty or nolo contendere ('no contest') to a felony or misdemeanor (other than a minor traffic violation)?" Plaintiff marked the box designated "No." (*Id.*) Prior to selling securities on behalf of PFS Investments, plaintiff was also required to complete and submit an application to the NASD, entitled "Uniform Application for Securities Registration or Transfer." (*Id.*, Exs. E, F.) This is known as a "U–4" form. In his U–4 form, plaintiff represented to the NASD that he had never pled guilty to, nor had he been charged with, a felony. (*Id.*, Ex. E.)

In 1999, PFS Investments received notice from NASD Regulation, Inc., the regulatory arm of the NASD, that plaintiff had a criminal record. Specifically, in 1996 plaintiff pled guilty in a Texas state court to a charge of aggravated assault. (*Id.*, Ex. H.) On August 4, 2000, PFS Investments received further notice from NASD Regulation, Inc., that plaintiff had filed an amended U–4, in which he disclosed that he had been charged with an aggravated assault in Texas. (*Id.*, Ex. I.) In the amended U–4, however, plaintiff continued to deny that he had pled guilty or nolo contendere to a felony. (*Id.*) Based on plaintiff's denial, the NASD determined the amended U–4 to be deficient. When plaintiff refused to further amend his U–4 to reflect his guilty plea, PFS allowed him to resign from its affiliate companies.

Subsequent to plaintiff's resignation, PFS Investments reported his resignation to the NASD by submitting a "Uniform Termination Notice for Securities Industry Registration," known as a "U–5" form. (*Id.*, Ex. J.) Primerica Life reported plaintiff's resignation to the Virginia Insurance Bureau, as mandated by Virginia Code § 38.2–1834.1. (*Id.*, Ex. K.) Each of the reports indicated that Gibbs resigned during the course of an investigation into alleged non-disclosure of his guilty plea in Texas to the crime of aggravated assault. (*Id.*, Exs. J, K.) On March 26, 2002, subsequent to the disclosures, plaintiff filed a motion for judgment in the Virginia Beach Circuit Court. The motion for judgment alleged that the U–5 form and the report filed by Primerica Life with the Virginia Insurance Bureau were false, malicious, defamatory, and slanderous. On April 23, 2002, defendants filed a notice of removal to federal court. On May 17, 2002, defendants filed an application to compel arbitration and to stay the action, along with an accompanying brief in support of the

application. On May 22, 2002, pursuant to a motion filed by the defendants, this court entered an order granting leave to the defendants to substitute a new brief for the one submitted on May 17, 2002, and gave the plaintiff eleven days in which to file a response. Plaintiff has not responded to the defendants' motion, and the matter is ripe for review.

## II. Discussion

The signature page of plaintiff's business application contains the following provision: "Any dispute with a PFS Company will be settled through Good Faith Negotiation or (if necessary) Arbitration according to the provisions (and subject to the exceptions) in the Basic Agreement and other agreements with PFS Companies." (*Id.*, Ex. C.) The Basic Agreement contains the following arbitration provision:

15. (a) Except as otherwise provided in this Agreement or another written agreement between you and a PFS Company, any dispute between you and a PFS Company, between you and a PFS Company affiliate (or any of their past or present officers, directors or employees) or between you and another PFS agent (as long as a PFS Company or a PFS Company affiliate or any of their personnel is also involved as a party to the dispute) will be settled solely through good-faith negotiation (as described in the then-current Operating Guideline on Good Faith Negotiation) or, if that fails, binding arbitration. "Dispute" means any type of dispute in any way related to your relationship with a PFS Company that under law may be

submitted by agreement to binding arbitration, including allegations of breach of contract, personal or business injury or property damage, fraud and violation of federal, state or local statutes, rules or regulations. A PFS Company may exercise rights under this Agreement without first being required to enter into food faith negotiations or initiate arbitration.

(*Id.*, Ex. A.) The Basic Agreement defines "PFS Companies" as "PFS and other companies authorized by PFS to enter into agreements with, or to offer products or services through, agents in the PFS sales force." (*Id.*, § 1.) This language encompasses PFS Investments and Primerica Life.

In connection with his employment, plaintiff also entered into separate contracts with Primerica Life and PFS Investments. Plaintiff's contract with Primerica Life, entitled "Primerica Life Agent Agreement," incorporates by reference the arbitration provisions contained in the Basic Agreement. (*Id.*, Ex. B.) Plaintiff's contract with PFS Investments, entitled "PFSI Representative Agreement," also incorporates by reference the arbitration provisions contained in the Basic Agreement. (*Id.*, Ex. D.)[1] Finally, the U–4 that plaintiff submitted to the NASD contains the following arbitration provision:

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or

---

1. Plaintiff's contracts with PFS Investments and Primerica Life contain identical language: "Part II of your Basic Agreement with PFS are incorporated by reference into this Agreement and shall have the same effect on this Agreement as if they were actually included in this Agreement." (Def.'s Brief, Exs. B, D.) Numerous federal courts, including the Fourth Circuit, have held that arbitration

agreements may be incorporated by reference. *See, e.g., Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 978 (4th Cir.1985) ("It is well-settled that, under the Federal Arbitration Act, an agreement to arbitrate may be validly incorporated into a subcontract by reference to an arbitration provision in a general contract.")

by-laws of the [NASD] as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(*Id.,* Exs. E, F.) Thus, as mandated by this provision, plaintiff agreed to arbitration as required by NASD rules. Indeed, plaintiff's contract with PFS Investments clearly indicates that, when applicable, he will be bound by the NASD arbitration rules:

The arbitration procedures in Section 12(b) of your Basic Agreement will not apply to any dispute arising under this Agreement if the arbitration rules under one of the following organizations by their terms govern: the National Association of Securities Dealers. . . .

(Pl.'s Brief, Ex. D., ¶ 6.)[2] Given that the plaintiff's various contracts mandate that he resolve disputes with PFS and its affiliates through binding arbitration, the issue before this court is whether the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), requires this court to give effect to these contracts.

### A. Applicability of the FAA

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[3] The Act further mandates that in the event of an alleged failure, neglect, or refusal to arbitrate, the court must compel arbitration if it is satisfied that "the making of the agreement for arbitration . . . is not in issue." *Id.* § 4. If, however, the court determines that the making of the agreement is at issue, the court must proceed to trial on that issue. *See id.; A/S Custodia v. Lessin Intern., Inc.,* 503 F.2d 318 (2d Cir.1974).

■ As is clear from the language of § 2, the FAA applies only to contracts "evidencing a transaction involving commerce." Section 1 defines commerce as including "commerce among the States." Thus, for the FAA to apply in this case, plaintiff's agreements with the PFS companies and with the NASD must "evidence a transaction involving [interstate] commerce." That the U–4 form, filed with the NASD, satisfies this requirement is well-established in the federal courts. *See, e.g., Zandford v. Prudential–Bache Secs.,* 112 F.3d 723 (4th Cir.1997); *Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 659–60 (5th Cir.1995). Plaintiff's Basic Agreement, and the two contracts incorporating this agreement, also meet this require-

---

**2.** The court notes that this provision within paragraph 6 of the contract contains a minor typographical error in referring to section 12(b) of the Basic Agreement, instead of to section 15(b). Sections 15(a) and 15(b) of the Basic Agreement detail plaintiff's arbitration agreement with the PFS companies; specifically, section 15(b) mandates the rules that will govern arbitration. Section 12 is not only an unrelated agency provision, but it contains no sub-parts. Moreover, the language of paragraph 6 quoted herein clearly indicates that, where applicable, the parties will arbitrate disputes under NASD rules. Therefore, it is clear to the court that this reference in paragraph 6 to section 12(b) should have been to section 15(b).

**3.** Section 1 of the FAA exempts from the Act "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." On its face, this language arguably could apply to the plaintiff's employment contract with the PFS companies. Yet, in *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), the Supreme Court ruled that 9 U.S.C. § 1 exempts from the FAA only employment contracts of transportation workers. Thus, plaintiff's employment contract does not fall within the exception provided in 9 U.S.C. § 1.

ment. Plaintiff is a Virginia resident and the PFS affiliates are headquartered in Georgia. The contracts contemplate that the plaintiff will forward applications for insurance contracts to Primerica Life and orders for securities to PFS Investments at the companies' Georgia headquarters. The companies will in turn issue insurance and securities products to plaintiff's Virginia customers. (Aff. Of Montgomery, ¶ 8.) Thus, the contracting parties were located in different states and performance was to occur across state lines. This is sufficient to meet the required interstate nexus. *See American Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 963 (4th Cir.1980); *see also Hendrick v. Brown & Root, Inc.*, 50 F.Supp.2d 527, 532 (E.D.Va.1999) (entirely intrastate activities that affect interstate commerce is sufficient nexus).

■ Although the contracts contemplate transactions involving interstate commerce, this does not end the inquiry. There are two determinations the court must make prior to compelling arbitration in this case. First, the court must determine whether a binding arbitration agreement exists between the parties to this suit. Second, the court must determine whether the dispute falls within the parameters of the arbitration agreement. *See Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir.2001); *Zandford*, 112 F.3d at 727 ("Arbitration may only be judicially compelled when the parties have agreed to it, and then only for those kinds of disputes that the parties have agreed to submit to arbitration.") The court must make these determinations for each of the agreements that defendants seek to enforce: the arbitration provision contained in the Basic Agreement and the arbitration provision contained in the U–4 form filed by the plaintiff with the NASD.

### 1. The Basic Agreement

■ Whether a party agreed to arbitrate a particular dispute is to be decided by applying "ordinary state-law principles that govern the formation of contracts." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir.1998). A party challenging the validity of an arbitration agreement may do so by challenging the underlying contract in which the agreement is contained. *See Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir.1972). Yet, to challenge the validity of an arbitration agreement, or the underlying contract in which the agreement is contained, a party must submit sufficient evidence to raise a genuine issue for trial. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129–30 (2d Cir.1997) ("As when opposing a motion for summary judgment ... the party requesting a jury trial must 'submit evidentiary facts showing that there is a dispute of fact to be tried.'") (citation omitted); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148 (5th Cir.1992) (same). Indeed, absent evidence of a factual dispute, the court need not even hold an evidentiary hearing on this issue. *See Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 158–59 (6th Cir.1983); *China Resource Products (USA) Ltd. v. Fayda Intern., Inc.*, 747 F.Supp. 1101, 1105 (D.Del.1990).

As noted above, plaintiff has failed to file any response with the court. Conversely, defendants filed a brief supported by an affidavit of the Director of PFS, along with numerous exhibits in support of the motion to compel. In reviewing the documentation provided by the defendants, the court is satisfied that no triable issue exists with regard to the validity of the parties' agreement. Thus, the issue before this court is whether the parties' dispute falls within the scope of the arbitration agreement.

The Basic Agreement indicates the plaintiff will arbitrate "any type of dispute in any way related to [plaintiff's] relationship with a PFS Company ... including allegations of breach of contract, personal or business injury or property damage, fraud and violation of federal, state, or local statutes, rule or regulations." (Def.'s Brief, Ex. A., § 15(b).) Plaintiff's libel claims, based on the reports filed by PFS Investments and Primerica Life, clearly are related to his relationship with two PFS companies. Given the unambiguous language of the arbitration provision, this court must give effect to its terms. Indeed, even if the language was less clear than it is, this court would be required to resolve any ambiguity in favor of arbitration. *See American Recovery Corp. v. Computerized Thermal Imaging,* 96 F.3d 88, 92 (4th Cir.1996) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability.") (citation omitted). Thus, the court concludes that the Basic Agreement requires the plaintiff to pursue his libel claims through binding arbitration.

### 2. The U–4 Form

For the reasons discussed above, *see supra* II.A.1., the validity of the arbitration agreement contained in the U–4 form is not at issue. Moreover, federal courts have consistently upheld U–4 arbitration agreements. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111

S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Zandford,* 112 F.3d at 727; *Williams,* 56 F.3d at 660. Thus, the issue before the court is whether the parties' current dispute falls within the scope of the U–4 arbitration agreement.

Plaintiff's libel claim against PFS Investments falls within the scope of the agreement. As provided in the U–4 form, plaintiff agreed to arbitrate "any dispute, claim or controversy that may arise [between the parties] that are required to be arbitrated under the rules, constitutions, or by-laws of the [NASD]." (Def.'s Brief, Exs. E, F.) Rule 10201(a) of the NASD Code of Arbitration Procedure provides:

> [A] dispute, claim or controversy ... arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such person(s) with such member, shall be arbitrated under this Code, at the instance of:
>
> (2) a member against a person associated with a member or a person associated with a member against a member....

NASD Code of Arbitration Procedure, Rule 10201, *available at* http://www.nasdadr.com/arb—code/arb—code.asp# 10201. Giving these terms their plain meaning, plaintiff's claim for libel constitutes a dispute arising out of his employment or his termination of employment with PFS Investments, an NASD member.[4] Indeed, numerous federal courts have held that libel claims based on information contained

---

4. The NASD by-laws indicate that a "'member' means any broker or dealer admitted to membership in the NASD." By-Laws of the National Association of Securities Dealers, Inc., Art. I., ¶(q), *available at* http://secure.nasdr.com/wbs/NET bos.dll?RefShow?ref=NASD 4;&xinfo=/goodbye.htm. A "person associated with a member" means "a natural person who is registered or has applied for registration under the Rules of the association." *Id.,* ¶(dd). Under these definitions, PFS Investments is a member of the NASD and plaintiff, as a registered member of the NASD, was at the time of his termination "a person associated with a member."

in U–5 forms are subject to the arbitration clauses contained in U–4 forms. *See Thomas James Assocs., Inc. v. Jameson,* 102 F.3d 60, 66–68 (2d Cir.1996); *Aspero v. Shearson American Express, Inc.,* 768 F.2d 106, 108–09 (6th Cir.1985); *Feinberg,* 658 F.Supp. at 892. Thus, the court concludes that the U–4 form requires plaintiff to pursue his libel claim against PFS Investments via binding arbitration.

### B. Defendant's Motion to Compel

■ For the reasons set forth above, the Basic Agreement between plaintiff and the PFS affiliates, as well as the U–4 form, require that plaintiff's libel claims be resolved through binding arbitration. Accordingly, defendants' motion to compel arbitration is GRANTED. The remaining issue to be resolved is *which* arbitration rules are applicable to the parties' dispute. Defendants contend that the Basic Agreement requires plaintiff to arbitrate his dispute with PFS Investments *and* his dispute with Primerica Life pursuant to the NASD arbitration rules. (Def.'s Brief at 13–14.) However, a review of the parties' various contracts reveals the error of this argument. Plaintiff's contract with PFS Investments clearly indicates that disputes between the plaintiff and that company will be governed by the NASD arbitration rules. (*Id.,* Ex. D, ¶ 6.) Indeed, the U–4 form also compels this conclusion. Yet, there is *no* such provision in plaintiff's contract with Primerica Life. (*Id.,* Ex. B.) Plaintiff's contract with Primerica Life expressly incorporates the arbitration provisions from the Basic Agreement; section 15(b) of the Basic Agreement mandates that any arbitration will be "conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (Def.'s Brief, Ex. A, § 15(b).) This contractual provision governs plaintiff's dispute with Primerica Life.[5]

### C. Defendant's Request for Attorney's Fees

■ Defendants request that this court award them attorney's fees incurred in filing the current motion to compel arbitration. Defendants cite to section 15(b) of the Basic Agreement, which provides that "[i]f one prevails over the other party, the losing party will pay the winning parties' expenses (including the attorney's fees) in handling the arbitration or court proceeding to enforce arbitration or the arbitration award." (Def.'s Brief, Ex. A.) Yet, section 15(a) dictates that "any dispute" between the plaintiff and a PFS company "will be settled *solely* through good faith negotiation ... or, if that fails, binding arbitration." (*Id.*) (emphasis added) Nothing in that clause excludes the issue of attorney's fees from this requirement. *Cf. PaineWebber, Inc. v. Bybyk,* 81 F.3d 1193, 1202 (2d Cir.1996) ("The agreement provides that 'any and all controversies' shall be submitted to arbitration; there is no express limitation with respect to attorneys' fees.") Thus, the parties' Basic Agreement requires the parties to arbitrate the issue of attorney's fees. Accordingly, defendants' request that this court award attorney's fees is DENIED.

### III. Conclusion

For the reasons set forth above, defendant's motion to compel arbitration is GRANTED, and the parties are ORDERED to proceed to arbitration as set forth in plaintiff's separate agreements with PFS Investments and Primerica Life. Because all claims in this dispute are subject to arbitration, plaintiffs' suit is DIS-

---

**5.** Logic also dictates this result. Primerica Life, an insurance company, is not a member of the NASD.

MISSED. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."). Given the court's ruling on these matters, defendants' motion to stay is MOOT.

The Clerk is DIRECTED to send copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO ORDERED.