**BRANCHVILLE MACHINERY CO., INC., Plaintiff,**

v.

**AGCO CORPORATION, Defendant.**

**No. CIV.A. 2:02CV917.**

United States District Court, E.D. Virginia, Norfolk Division.

March 18, 2003.

Joshua Pretlow, Jr., Pretlow, Eason & Pretlow, Suffolk, VA, Thomas P. Howell, IV, Day Edwards Propester & Christensen PC, Oklahoma, OK, Counsel for plaintiff.

David N. Anthony, Kaufman & Canoles PC, Norfolk, VA, Thomas B. Gary, Stuart W. Gray, Freeman Mathis & Gary LLP, Atlanta, GA, Counsel for defendant.

### MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendant AGCO Corporation's ("AGCO") Motion to Dismiss and Compel Arbitration or, in the Alternative, Motion to Stay, filed pursuant to Federal Rule of Civil Procedure 12(b)(1) and 9 U.S.C. § 1 *et seq.* For the reasons stated below, defendant's motion is **GRANTED** in part and **DENIED** in part.

### Factual and Procedural History

On November 26, 2002, plaintiff Branchville Machinery Co., Inc., ("Branchville") filed a complaint alleging claims of breach of warranty, breach of the covenant of good faith and fair dealing, and negligence against AGCO. AGCO filed its answer and the instant motion, with a memorandum in support, on January 2, 2003. The appropriate response and reply having been received, this matter is ripe for review.

Branchville is a dealer in agricultural machinery. On March 31, 1976, Branchville entered into a Dealer Sales and Service Agreement ("Dealer Agreement") with Massey–Ferguson, Inc., ("Massey–Ferguson"), authorizing Branchville to sell equipment and parts for Massey–Ferguson. On May 5, 1992, Branchville entered into an Agreement for Wholesale Financing ("Financing Agreement") with AGCO to allow Branchville to finance its purchase of AGCO's equipment, which it also sold to

its customers. Between January 1993 and April 1994, AGCO obtained Massey–Ferguson's distribution rights and effected a purchase of Massey–Ferguson.

Branchville alleges that beginning in March 1995, and continuing through May 2001, the differentials failed in numerous Massey–Ferguson tractors manufactured by AGCO and sold by Branchville to its customers, causing the tractors to break down during use. According to Branchville, the problems with these tractors, and AGCO's failure to solve the problems, led to a drop in sales and a loss of profits and customer loyalty. Therefore, Branchville filed the instant complaint, seeking to recover for its damages.

In the motion currently before the court, AGCO alleges that the action filed by Branchville is subject to arbitration under the Financing Agreement and is therefore not properly before the court. AGCO seeks to have the court compel arbitration and dismiss or stay the action. In addition, AGCO contends that the Financing Agreement includes a provision that requires a party who pursues in court an action that should be subject to arbitration to pay the costs of the opposing party. It seeks an order from the court directing Branchville to pay its costs. Branchville maintains that the arbitration clause is restricted to matters arising under the Financing Agreement, and that the 1976 Dealer Agreement, which contains no arbitration clause, governs the instant complaint, as the tractors at issue are Massey–Ferguson tractors. Furthermore, Branchville argues that the arbitration clause cannot apply to the Dealer Agreement, which was signed prior to the Financing Agreement and was a contract between different parties. Finally, Branchville asserts that it did not intend for the arbitration agreement to apply to the Dealer Agreement, arguing that it refused to sign several new dealer agreements containing arbitration clauses proposed by AGCO after that company took over Massey–Ferguson's operations.

### *Standard of Review*

There are "two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). The attack on jurisdiction may be based upon a facial deficiency in the pleadings, or, as in the instant matter, on facts that exist separately from the pleadings. The burden of establishing jurisdiction rests with the plaintiff. *Id.* The court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991).

### *Analysis*

■ The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* provides that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the FAA applies only to contracts "evidencing a transaction involving commerce," which is defined in Section 1 as including "commerce among the several States," the agreement between Branchville and AGCO must "evidence a transaction involving [interstate] commerce." Per the complaint, Branchville is a Virginia corporation and AGCO is a corporation organized under the laws of Delaware, with its principal place of business in Geor-

gia. As Branchville sells to its customers machinery purchased by it from AGCO, the transactions between the companies unquestionably involve interstate commerce. Therefore, the FAA governs the arbitration agreement in question.

AGCO bases its argument on an arbitration clause in the Financing Agreement. The clause reads as follows:

16. **BINDING ARBITRATION.** Except as otherwise specifically provided below, all actions, disputes, claims and controversies heretofore or hereafter arising out of or directly or indirectly relating to ... (b) any subsequent agreement entered into between the parties hereto, (c) any previous agreement entered into between the parties hereto, (d) any relationship or business dealings between the parties hereto, and/or (e) the transactions contemplated by this Agreement or any previous or subsequent agreement between the parties hereto ... will be subject to and resolved by binding arbitration pursuant to the commercial arbitration rules ... of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

16.2 ... If, however, either party brings any action for judicial relief with respect to any Disputes that the parties have agreed to arbitrate under the terms of this Agreement, the party who brought such action will be liable for and will immediately pay to the other party all of the other party's costs and expenses (including attorney's fees) incurred by the other party to stay such action and remove or refer such Disputes to arbitration.

(Agreement for Wholesale Financing at ¶¶ 16, 16.2, attached as Ex. 1 to Ex. A of Mem. Support Def. Mot. Dismiss [hereinafter Financing Agreement].)

Federal policy, as codified in the FAA, favors the arbitration of disputes. Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The determination of whether a party has agreed to arbitration is a matter of contract interpretation, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). However, a request to arbitrate an issue "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 582–83, 80 S.Ct. 1347. Thus, the Fourth Circuit has stated that "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.,* 867 F.2d 809, 812 (4th Cir.1989).

Courts have used the distinction between "broad" and "narrow" arbitration clauses in determining how to construe the clauses and apply them to the relevant issues. The arbitration clause in the Financing Agreement, quoted above, is a "broad" one. It is even more far-reaching than a clause defined as "broad" by the Fourth Circuit in *Drews Distributing, Inc. v. Silicon Gaming, Inc.;* the clause at issue in *Drews* covered " 'any controversy or claim arising out of or related to' that agreement." 245 F.3d 347, 350 (4th Cir. 2001). It covers several aspects of the relationship between Branchville and AGCO, including disputes arising from

"any previous agreement" between the two, "the transactions contemplated by [the Financing Agreement] or any previous or subsequent agreement" between them, and "any relationship or business dealings" in which the two engage. (Financing Agreement at ¶ 16.) The clause in the instant agreement, then, by its own terms, reaches beyond the Financing Agreement itself to cover disputes arising from all aspects of the parties' relationship.

Branchville argues that it did not intend for the agreement to cover transactions arising under the Dealer Agreement, and that it could not have foreseen that AGCO would succeed to the rights of Massey–Ferguson. It points out that AGCO had not yet acquired Massey–Ferguson when the Financing Agreement was signed in 1992. It further argues that its rejection of AGCO's attempts to negotiate a new dealer agreement containing an arbitration clause evince its intent not to arbitrate such claims.

■ However, the fact is that Branchville signed the Financing Agreement, thereby agreeing to be bound by its terms. Those terms included the broad arbitration clause, which clearly covered "disputes ... arising out of or directly or indirectly relating to ... any relationship or business dealings between the parties." (Financing Agreement at ¶ 16.) It is immaterial that Branchville could not have foreseen the AGCO purchase of Massey–Ferguson; there could be thousands of potential disputes that Branchville did not foresee in its relationship with AGCO; nevertheless, it agreed to be bound to arbitrate those disputes that did arise. Furthermore, Branchville signed the Financing Agreement in 1992; the breakdowns of the tractors at issue occurred between March 1995 and May 2001. At that time, Branchville had signed the Dealer Agreement contain-

ing the broad arbitration clause, and it would have, or should have, been aware of its duty to arbitrate. Branchville asserts that the sales of the tractors were governed by the Dealer Agreement, and that the Dealer Agreement contains no arbitration clause. However, as the Fourth Circuit has explained, the arbitrability of a dispute is determined by analysis of "the factual allegations underlying the claim." *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir.1988). The facts in the instant claim clearly indicate that the dispute over the Massey–Ferguson tractors arises out of business dealings between Branchville and AGCO. Based on the wording of the arbitration clause in the Financing Agreement, the clear interpretation is that Branchville consented to arbitration for disputes arising out of its relationship with AGCO.

Given the Fourth Circuit's edict that "when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration," *Peoples Security Life*, 867 F.2d at 812, two other clauses in the arbitration section of the Financing Agreement could also be deemed to bind Branchville to arbitrate the dispute with AGCO. Clauses (c) and (e) bind to arbitration disputes arising from "any previous agreement entered into between the parties" and "the transactions contemplated by this Agreement or any previous or subsequent agreement between the parties." (Financing Agreement at ¶ 16.) The sale of the Massey–Ferguson tractors, regardless of the contract under which they are governed, or the original signatories of that contract, arose from an agreement between Branchville and AGCO; factually, there is no other possible interpretation, as, at the time of the sales, AGCO had purchased Massey–Ferguson, and Branchville had to,

**312**

and did, purchase the tractors from AGCO.

Based on an analysis of the facts of the instant dispute, including the clauses contained in the Financing Agreement, the court finds that the dispute, arising as it does from the business dealings between Branchville and AGCO, is subject to arbitration as set out in the Financing Agreement. The FAA mandates that in the event of an alleged failure, neglect, or refusal to arbitrate, the court must compel arbitration if it is satisfied that "the making of the agreement for arbitration ... is not in issue." 9 U.S.C. § 4. Branchville does not contend that there is no arbitration agreement; it simply disputes the breadth of coverage of said agreement. The making of the agreement, therefore, is not in dispute, and the court must, in accord with the FAA, compel arbitration. Because all of Branchville's claims are subject to arbitration, dismissal is warranted. *See Gibbs v. PFS Investments, Inc.,* 209 F.Supp.2d 620, 628 (E.D.Va.2002) (" 'The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.' ") (quoting *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992)).

■ AGCO next argues that the Financing Agreement also requires that Branchville pay its costs and fees incurred in the instant matter, as set out in Section 16.2 of the Financing Agreement. Because the dispute over the matter of costs and fees arises from the terms of the Financing Agreement, that dispute is subject to the same arbitration requirement that AGCO advocates for the claim filed by Branchville. The arbitration clause does not exclude the issue of costs and fees from its requirement. *See Gibbs,* 209 F.Supp.2d at 624. Therefore, the court must deny the request for costs and fees.

*Conclusion*

For the reasons set forth above, defendant's motion to compel arbitration is **GRANTED**, and the parties are **ORDERED** to proceed to arbitration as set forth in the Financing Agreement. Defendant's motion for costs and fees is **DENIED**. Because all claims in this dispute are subject to binding arbitration, plaintiff's suit in this court is **DISMISSED** without prejudice to pursue the claims through arbitration. Given the court's ruling, defendant's motion to stay is **MOOT**.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to counsel for both parties.

**IT IS SO ORDERED.**