# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Suntrust Securities, Inc.

v.

Martha M. Marable

March 31, 2004

Case No. Ch. 03-194

BY JUDGE EDWARD L. HOGSHIRE

Petitioner, Suntrust Securities, Inc., has filed an Application and Motion to Stay Arbitration Proceedings initiated against it by Martha M. Marable, Respondent. The Court, having reviewed the briefs and applicable authorities and having heard oral argument, for the reasons set forth in detail below, has determined that the Motion to Stay Arbitration Proceedings should be denied.

## Summary of Facts

The pertinent facts, as set forth in the pleadings and memoranda, are not in dispute. Respondent was formerly employed by Petitioner as an investment consultant. Respondent and Petitioner entered into a Confidentiality and Solicitation Agreement ("Confidentiality Agreement") dated March 29, 2002, restricting her use of Petitioner's confidential information and restricting her solicitation of Petitioner's customers and employees. Paragraph 9 of the Confidentiality Agreement contained an arbitration clause, which provided in part: "Any claim for money damages arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the commercial arbitration rules of the

American Arbitration Association. . . ." Respondent was subsequently terminated from Petitioner's employ on November 20, 2002. As required by the rules of the National Association of Securities Dealers ("NASD"), Petitioner recorded the reason for the termination on a Uniform Termination Notice ("Form U-5") and transmitted this form to the NASD on December 9, 2002. Respondent alleges that the reason for her discharge as stated on the NASD Form U-5 is defamatory.

Respondent initiated a demand for arbitration of the defamation claim against Petitioner to the American Arbitration Association ("AAA") on December 1, 2003. Then, on December 19, 2003, Petitioner initiated this proceeding, asserting that the defamation claim is not arbitrable under the arbitration clause (Paragraph 9) of the Confidentiality Agreement.

## *Question Presented*

Is Respondent's claim for defamation arbitrable within the meaning of Paragraph 9 of the Confidentiality Agreement?

## *Analysis and Discussion of Authority*

No one disputes that a party cannot be compelled to arbitrate a question that is not arbitrable under the agreement between the parties. *Weitz v. Hudson*, 262 Va. 224, 228, 546 S.E.2d 732, 734 (2001) (*citing Doyle & Russell, Inc. v. Roanoke Hosp. Assoc.*, 213 Va. 489, 494, 193 S.E.2d 662, 666 (1973)). In this instance, this Court must determine whether there is an agreement between the parties that the arbitrator, not the court, should first decide whether this defamation claim should be submitted to arbitration. Paragraph 9 of the Confidentiality Agreement provides in part: "[a]ny claim for money damages arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association. . . ." The Supreme Court of Virginia has described the phrase "arising out of or relating to" in an arbitration clause as "very broad in its coverage." *Waterfront Marine Construction v. Northend 49ers Sandbridge Bulkhead Groups A, B, and C*, 251 Va. 417, 426, 468 S.E.2d 894, 899 (1996) (*citing McMullin v. Union Land & Management Co.*, 242 Va. 337, 341, 410 S.E.2d 636, 639 (1991)). That Court noted that "[b]road language of this nature covers contract-generated or contract-related disputes between the parties however labeled." *McMullin*, 242 Va. at 341, 410 S.E.2d at 639 (*quoting Maldonado v. PPG Industry, Inc.*, 514 F.2d 614, 616, n. 6 (1st Cir. 1975)).

The Circuit Court of Fairfax County in *Ahern v. Toll Brothers, Inc.*, in construing a similarly worded arbitration provision, found that "broad arbitration clauses do not limit arbitration to the literal interpretation or performance of the contract, but embrace every dispute that has a significant relationship to the contract regardless of the label attached to the dispute." 55 Va. Cir. 18, 21 (Fairfax County 2001) (citing *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996)). "Even if it were not clear that a particular dispute should be submitted to arbitration, that very issue would be one for the arbitrator to decide, not the Court." *Id.*

Finally, in *AT&T Technologies, Inc. v. Communications Workers of America,* the Supreme Court enunciated a presumption favoring arbitrability:

> it has been established that where a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

AT&T Technologies, Inc. v. Communications Workers of Am., 106 S. Ct. 1415, 1419 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 80 S. Ct. 1347, 1353 (1960)).

It is worth noting that, although the Supreme Court of Virginia in *Waterfront Marine* held that such an arbitration clause is very broad, it is not unlimited. 251 Va. 417 at 429, 468 S.E.2d at 901. The Court distinguished that instant case from *McMullin*, in which the Court found that the controversy was "related to" the agreement because the litigants had to refer to a provision of the contract to resolve the controversy; in *Waterfront Marine,* no provision of the contract would need be construed or applied to resolve the controversy. *Id.* Hence, the court there declined to find that the "arising out of or related to" language in an arbitration clause encompassed a second demand for arbitration based on noncompliance with a prior arbitration award, "because such a construction is far broader than any we have previously applied to the clause." *Id.*

This Court is not making a judgment about whether or not the defamation claim at issue is properly within the scope of the arbitration agreement. Under Rule R-7(a) of the Commercial Arbitration Rules of the AAA, the arbitrator has the power to rule on his or her own jurisdiction, "including

any objections with respect to the existence, scope, or validity of the arbitration agreement." Once this Court decides that a reasonable arbitrator could find that the defamation claim is "related to" the Confidentiality Agreement, it is for the arbitrator to decide whether this claim should be arbitrated. Whether or not the parties' agreement to arbitrate in Paragraph 9 encompasses a defamation claim is a close question. Although, unlike *McMullin*, no clause of the Confidentiality Agreement need be construed or applied to resolve the controversy, it is nonetheless not so akin to the facts in *Waterfront Marine* so as to foreclose arbitrability. The parties there demanded a second arbitration of a dispute over compliance with an arbitration award. The Court found that the contract "reflected the parties' understanding that the arbitration process would end with the arbitration award" and that any further "action regarding compliance would be undertaken in a different forum." *Waterfront Marine*, 251 Va. at 49, 468 S.E.2d at 901.

In this instance, Respondent's request for arbitration of her defamation claim is not so attenuated as in *Waterfront Marine*. Respondent's defamation claim arises out of her employment relationship with Petitioner. A possible interpretation of Paragraph 9 is that the defamation claim is related to the Confidentiality Agreement through the employment relationship, given that the "related to" language is considered extremely broad in its coverage. Thus, the defamation claim can be construed as a "contract-related" claim. Respondent was required to sign the Confidentiality Agreement as a condition of employment, and the agreement regulated aspects of her employment relationship with Petitioner. The employment relationship is integral to both the defamation claim and the Confidentiality Agreement. *See, e.g., Martin & Martin, Inc. v. Bradley Enterprises, Inc.*, 256 Va. 288, 504 S.E.2d 849, 851 (1998); *Winn v. Aleda Const. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984).

## Conclusion

In light of the presumption favoring arbitrability, and given the precept that all "doubts should be resolved in favor of coverage," this Court holds that the question of arbitrability of the defamation claim is one for an arbitrator in accordance with the Commercial Arbitration Rules of the AAA, as provided for in Paragraph 9 of the Confidentiality Agreement.