# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Christopher Martino

v.

Banc of America
Services, Inc., et al.

December 6, 2004

Case No. 03-238

BY JUDGE EDWARD L. HOGSHIRE

Responding to Christopher Martino's Motion for Judgment, Banc of America Investment Services, Inc., and Mr. Rex Sparks (collectively, "Defendants") filed a Motion to Compel Arbitration and Stay All Proceedings. For the reasons articulated below, Defendants' motion is granted.

*Procedural History*

The plaintiff filed the instant case on December 3, 2003, in the Circuit Court of the City of Charlottesville, alleging defamation per se, defamation, and conspiracy to injure business and reputation in business against Defendants, as well as Bank of America, N.A. Plaintiff seeks $3,000,000 in compensatory damages and $700,000 in punitive damages. Defendants responded to the suit with a Motion to Compel Arbitration and Stay All Proceedings. Both sides filed briefs on this issue.

*Summary of Facts*

Christopher Martino is an investment advisor. (MFJ at 2.) He is registered with the National Association of Securities Dealers, Inc. ("NASD")

as a financial advisor. Between June 1998 and December 2002, Mr. Martino was employed as an Assistant Vice President of Investments for Banc of America at its business location in the Bank of America building in Charlottesville, Virginia. (MFJ at 2.) As a requirement of his employment, Mr. Martino executed a standard NASD Uniform Application for Securities Industry Registration or Transfer form ("Form U-4"). Pursuant to this form, Mr. Martino agreed to resolve any dispute or controversy arising out of the employment relationship between Martino and Banc of America in arbitration. (Brief for Defendants at 2.)

In December 2002, Banc of America terminated Mr. Martino's employment. (MFJ at 2.) Mr. Martino alleges that as he cleaned out his desk, Mr. Sparks and another Banc of America employee loudly and falsely accused him of attempting to steal Banc of America property. (MFJ at 3.) According to the plaintiff, employees and customers of both Bank of America and Banc of America were able to hear these accusations. (MFJ at 3.) Plaintiff avers that Banc of America then summoned the police, who questioned Mr. Martino. (MFJ at 3.) The police rejected Banc of America's claim that Plaintiff was stealing their property. (MFJ at 3.)

Plaintiff alleges that, in early January 2003, he arrived at Bank of America to do personal banking for himself. (MFJ at 3.) According to Mr. Martino, the branch manager of the Bank of America confronted him in the lobby and asked if he was "allowed" to be in the building. (MFJ at 3.) He further stated that Mr. Sparks had told him that Mr. Martino could not be in the building. (MFJ at 3.) As the bank lobby is a public area, Plaintiff contends that at least one other Bank of America employee and two Bank of America customers heard the branch manager's comments. (MFJ at 3.)

Plaintiff further alleges that, in February 2003, Mr. Sparks telephoned his supervisor at his new place of employment and declared that Mr. Martino had stolen property from Banc of America. (MFJ at 4.) Plaintiff asserts that this accusation was false, malicious, and intended to damage his reputation and new employment relationship. (MFJ at 4.)

Finally, Plaintiff alleges that Defendants made false and malicious statements to his clients. (MFJ at 4.) In July 2003, a client informed Mr. Martino that an employee at Bank of America had tried to persuade her not to work with him. (MFJ at 4.) Plaintiff asserts that this employee further told his client that Mr. Martino was not with Banc of America any longer because he did not return phone calls to his clients. (MFJ at 4.) Plaintiff avers that another client came to Mr. Martino with numerous questions about his future in the business after a Bank of America customer service representative said to the client, "We hope Christopher is happy now." (MFJ at 4.)

270

*Issue Presented*

Do Plaintiff's claims arise out of events related to his employment, thus subjecting them to arbitration under Form U-4?

*Analysis*

Plaintiff signed a standard Form U-4 when he began working for Banc of America which required arbitration of any dispute, claim, or controversy involving the firm and any associated person. The language of that form incorporates the rules, constitutions, and by-laws of the NASD. NASD Rule 10201(a) provides that claims "arising out of the employment or termination of employment of such associated person(s)" shall be arbitrated. NASD Rule 10201(a). The Circuit Court for Fairfax County has previously ruled that arbitration agreements with NASD members are covered by the Federal Arbitration Act. *Heritage Fin. Invs. v. Geiger*, 18 Va. Cir. 131, 132 (Fairfax County 1989). The Supreme Court has held that, if a dispute is within the coverage of a federal act, federal law applies. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983). The Court notes that the outcome of this case would be the same whether it is governed by federal law or Virginia law.

Under federal law and Virginia law, agreements to arbitrate are viewed favorably. *See* Federal Arbitration Act, 9 U.S.C. § 2; Va. Code Ann. § 8.01-581.01 ("a written contract to submit to arbitration . . . is valid, irrevocable, and enforceable."). *See also, TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 122-23 (2002) (finding an arbitration clause to be enforceable and recognizing that the public policy of Virginia favors arbitration). The Supreme Court has enunciated a presumption favoring arbitrability and courts are encouraged to resolve disputes in favor of coverage. *See AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

Parties cannot be compelled to arbitrate disputes they have not agreed to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995). Thus, the Supreme Court has provided guidance for determining the scope of an agreement to arbitrate. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83

(1960). Further, the Fourth Circuit has noted, "the heavy presumption of arbitrability requires that, when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989).

Claims of defamation per se, defamation and conspiracy to injure business and reputation in business routinely arise in broker termination disputes and are clearly arbitrable. *See, e.g., Gibbs v. PFS Invs., Inc.*, 209 F. Supp. 2d 620 (E.D. Va. 2002). However, Plaintiff argues that his claim does not arise out of employment or the termination of his employment. Rather, he asserts, the facts alleged in this claim occurred after his discharge, did not involve his employment relationship with the Defendants, and are not covered by the arbitration agreement.

The Virginia Supreme Court has interpreted the phrase "rising out of or relating to" in an arbitration clause very broadly. *Waterfront Marine Construction v. Northend 49ers Sandbridge Bulkhead Groups A, B, and C*, 251 Va. 417, 426 (1996) (citing *McMullin v. Union Land & Management Co.*, 242 Va. 337, 341 (1991)). Indeed, this court has previously noted that "broad arbitration clauses do not limit arbitration to the literal interpretation or performance of the contract, but embrace every dispute that has a significant relationship to the contract. . . ." *Suntrust Secs., Inc. v. Marable*, 64 Va. Cir. 293, 295 (City of Charlottesville 2004) (quoting *Ahern v. Toll Brothers, Inc.*, 55 Va. Cir. 18, 21 (Fairfax County 2001)). However, the Virginia Supreme Court has not addressed the arbitrability of claims arising out of events occurring after an employee's discharge.

The District Court for the Eastern District of Virginia decided such a case in *Gibbs*, 209 F. Supp. 2d at 620. The district court held that the plaintiff's post-termination claim that his former employer made false, malicious, slanderous, and defamatory statements was subject to arbitration. *Id.* Because the plaintiff's claim involved information provided on his employment application, the court ruled that this claim arose out of the employment relationship and thus was subject to arbitration. *Id.* at 626-27.

The Second Circuit has also considered whether a plaintiff alleging libel, slander, portrayal in a false light, and conspiracy to commit tortious interference with prospective business relationships against a former employee should be compelled to arbitrate pursuant to the language in Form U-4. In *Fleck v. E. F. Hutton Group, Inc.*, 891 F.2d 1047 (2d Cir. 1989), the Second Circuit declined to reassert its position in *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir. 1983), that disputes arising out of events occurring after termination of employment are not subject to arbitration

agreements. Rather, the *Fleck* Court noted that tort claims concerning statements made after termination may be arbitrable. 891 F.2d at 1052. However, *Fleck* also reinforced the principles set forth in *Coudert*, that "[a]rbitration agreements are favored in the law and are to be broadly construed. An order to arbitrate should not be denied unless it can be said that the arbitration clause is not susceptible of a reasonable interpretation covering the asserted dispute. . . . Doubts should be resolved in favor of coverage." *Fleck*, 891 F.2d at 1050 (citing *Coudert*, 705 F.2d at 81). In ordering arbitration of the tort claims, the *Fleck* Court stated that the communications at issue were "of the sort that an employer would foreseeably make upon an employee's termination."

The Eighth Circuit also adopted a framework for analyzing arbitration claims similar to that of the Second Circuit. The Eighth Circuit has noted that, in determining the arbitrability of incidents that occurred after the termination of employment, the Court should determine whether the tort claim "involve[s] significant aspects of the employment relationship, including but not limited to explicit contractual terms." *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1167 (8th Cir. 1984). "[A]ny dispute with origins in the employment contract presents a strong case for arbitration." *Id.*

In *Morgan*, the Court held that the dispute between the plaintiff and his former employer, which arose out of the plaintiff' allegations that the defendants told fellow office workers that the plaintiff had stolen things from their desks was not arbitrable because the connection between this dispute and the plaintiff' employment as a securities broker was tenuous. 729 F.2d at 1168. The Court noted that the plaintiff's abilities as a broker were not called into question under the facts of the case. *Id.* However, in the present case, the Plaintiff specifically alleges that the statements made by the Defendants called into question his integrity in performing his professional duties.

The Court must determine whether the Plaintiff's claims arise out of his employment relationship with the Defendants. This dispute arises out of events that occurred as the Plaintiff cleared out his desk immediately after his employment relationship with the Defendants was terminated. Clearly, the dispute would not have arisen but for the Plaintiff's employment with the Defendant. Further, the additional incidents alleged by the Plaintiff are tied to this initial encounter. In his complaint, Plaintiff states that his causes of action arise from the fact that Mr. Sparks made statements imputing that Mr. Martino is unfit to perform his job and that he lacked integrity in the performance of his duties. Plaintiff also asserts that these statements prejudiced him in his profession. The allegedly defamatory statements involved the Plaintiff's performance of his duties, his servicing of customers, and the circumstances

surrounding his termination. Thus, this claim arose out of the employment relationship. Given the broad language in the arbitration agreement and the precept that all doubts should be resolved in favor of coverage, the Court finds that this dispute must be arbitrated.

## Conclusion

Because the factual allegations set forth in the complaint arise out of the Plaintiff's employment relationship with the Defendants, the Court grants Defendant's Motion to Compel Arbitration and Stay All Proceedings pending the outcome of the arbitration proceedings.